NATIONAL AID ASSOCIATION v. SAMUEL T. BRATCHER.*

FILED JULY 1, 1902.  No. 11,943.

Commissioner's opinion, Department No. 2.

1. **Benefit Certificate:** CONDITION PRECEDENT.  Where an application for a benefit certificate of membership in a mutual benefit association declares on its face that payment of a first assessment and registry fee is a condition precedent to membership and to the issuing of the certificate, and the by-laws contain the same provision, the applicant does not become a member and the certificate is not in force until such payments are actually made.

2. **Evidence.**  Evidence examined, and *held* that in this case there was no waiver of the time of payment.

3. ——: ESTOPPEL.  Evidence examined, and *held* not sufficient to create an estoppel on the part of the association to defend against an action on the certificate.

4. **Benefit Certificate:** MANUAL POSSESSION: RIGHT OF ACTION.  Manual possession of the benefit certificate in case it is in force and is a binding contract, is not necessary in order to maintain an action upon it.

5. ——: ——: ——: ISSUANCE AND DELIVERY: RECOVERY IN REPLEVIN ACTION.  Where the certificate is not in force and its issuance and delivery is refused, possession of it obtained in an action of replevin before a justice of the peace, does not satisfy the requirements of issuance and delivery, and the rights of the holder remain the same as they were before he obtained possession of it in that manner.

ERROR from the district court for Clay county.  Tried below before STUBBS, J.  *Reversed.*

*David Overmeyer,* for plaintiff in error:

Replevin is not available to compel completion of performance of contract.  A justice's jurisdiction is limited

*Rehearing allowed.  Reversal adhered to.  See opinion, page 394, post.

to the sum of $200.   The certificate in this case, on its
face, was of the value of $1,000.   The only possible remedy
is by a suit for damages before a court of competent juris-
diction.   A delivery of personal property by a vendor to
a vendee may be actual or symbolical; but it must be by
some act indicating a purpose to pass possession of prop-
erty.   *Graves v. Damrow,* 28 Nebr., 271.

*F. J. Dunham* and *J. L. Epperson & Sons,* also for
plaintiff in error.

*L. B. Stiner* and *Tibbets Bros. & Morey, contra.*

Barnes, C.

This action was commenced in the district court for
Clay county against the National Aid Association by the
defendant in error to recover the sum of $1,000 and in-
terest on a joint beneficiary certificate alleged to have
been issued by that association to the defendant and his
deceased wife.   The facts, all of which appear in the rec-
ord, are as follows:   Some time in October, 1898, one P.
B. Stover, who was called an organizer for the association,
came to Fairfield, Nebraska, and proceeded to organize a
local lodge of that order.   It appears that the association
was a foreign corporation,—a mutual benefit association,
having a lodge plan, with ritualistic features and an in-
surance attachment.   Stover induced quite a large num-
ber of persons at Fairfield, and in that vicinity, to sign a
petition for a charter to organize a local lodge of the
order, and also to sign applications to become beneficiary
members thereof and take out contracts or certificates of
insurance.   He approached the defendant, Samuel T.
Bratcher, and asked him to join the order.   Bratcher told
him that he wanted the insurance part of the order, and
did not care for anything else; that his wife was pregnant
and not in a condition to join the lodge, and he would not
go into it.   Stover told him that the condition of his wife
made no difference; that they could sign applications and

he would give them a joint beneficiary certificate; that he, Bratcher, could attend the first meeting of the lodge and be initiated and his wife could attend later; that his initiation, so far as that requirement was concerned, would be all that was necessary to make the joint certificate good. Thereupon the Bratchers signed the petition for a charter, and each of them signed a separate application for the purpose of procuring a joint beneficiary certificate. These applications were signed on the 24th day of October, 1898. The applicants both passed the proper medical examination, but on the application of Mrs. Bratcher the fact of her pregnancy was noted. Her application was held up for a few days, when the medical examiner placed thereon the following: "Pregnancy terminated October 26th. She is all right now. Confined Friday night. No complications." The petition for a charter and these applications, with many others, were sent to the national secretary at Topeka, Kansas, and on the 7th day of November, following, the certificate in question, with others, was made out and sent to Stover, the organizer, together with the charter. The lodge was instituted by him, and defendant Bratcher was present, and duly initiated into the mysteries thereof. Mrs. Bratcher was not present, and never was initiated. The officers of this local lodge were duly elected and qualified, and one W. S. Hayes became the local secretary of the organization. Thereafter Stover turned over all of the beneficiary certificates, except the one in question herein, to said secretary. The persons to whom they were issued paid their first assessments and registry fees to him, and he thereupon signed and delivered the certificates to the respective members entitled thereto. It appears that Stover was indebted to defendant Bratcher for livery teams furnished him for driving while engaged in his work of organization, and Stover agreed with him to pay his assessments and registry fees. Immediately after the lodge was organized Stover went to Nelson, Nebraska, without paying these fees and assessments for Bratcher and his wife, or any of

them, to the local secretary, and took with him the certificate in question. In a few days Bratcher inquired of the secretary about his certificate, and was told that it was issued but was not there for him. Nothing further was said or done about the matter, and on the 20th day of November Mrs. Bratcher died. On the 22d, two days thereafter, Stover sent the certificate, together with the sum of $3.25, the amount of the first assessments and registry fees therefor, by mail to the local secretary. Shortly afterwards Bratcher called upon that officer, who told him that the certificate and money had been received on the 22d inst., two days after Mrs. Bratcher's death, and that he did not think he had a right to deliver the certificate to him for the reason that Mrs. Bratcher was dead. Bratcher made no demand for it at that time, but shortly afterwards obtained possession thereof by writ of replevin issued from a justice court. The secretary made out a receipt to Stover for the money, and left it in his receipt book. The money was sent to the grand secretary, who refused to accept it, and returned it to the local secretary. About this time the president of the association visited Fairfield. The lodge was called together and the question as to the payment of this claim was discussed, and it was voted that it ought to be paid. At that meeting L. B. Stiner, the attorney for Bratcher, was asked to act as secretary by the president, and he did so. The books, papers and money belonging to the office were turned over to him, and he thus obtained possession of the money order which contained the amount of the Bratcher assessments and registry fees, paid to the secretary by Stover, and which had been returned by the grand secretary. Stiner, while he had the books in his possession, delivered the receipt, made out to Stover to the defendant Bratcher. When his successor was elected he turned over all the books and papers then in his possession to him, and all of the money, except the money order which contained the amount of Bratcher's assessments and fees, and this his successor refused to receive, so that Mr. Stiner has the

money in his possession. There was some talk on the part
of the president of a settlement of this claim, but no set-
tlement was made, and Bratcher was told by him to come
to Topeka and attend a meeting of the board of directors
that was shortly to be held there, and that the matter
could be settled. Stiner attended such meeting for
Bratcher, but no settlement was effected, and the defend-
ant in error thereupon commenced this suit. The plain-
tiff in error answered, and for its principal defense, al-
leged that the deceased, Lucinda Bratcher, never was
initiated in the local lodge at Fairfield, or any other local
lodge of the order; that she never paid the secretary of
the local lodge the registry fee and first assessment, as
required by the by-laws, which were set forth in said an-
swer in full; that she never became a member of the order,
and that no beneficiary certificate was ever issued and de-
livered to her, as provided by the by-laws; that she never
complied with the rules, regulations and by-laws of the
order, which were made and are a part of the benefit
certificate made out for her, and that no liability attached
thereon in her favor, or for the benefit of her surviving hus-
band, and against this association at her death; that the
pretended certificate was never delivered to her by the
local secretary or by any other person with the knowledge
or consent of the association. Bratcher's reply was a de-
nial, and an allegation of the facts set forth herein, which
it was claimed constituted a waiver or an estoppel on the
part of the association to contest the claim set forth in the
petition. A trial was had to a jury, and at the conclusion
of the evidence both parties requested a peremptory in-
struction for a verdict. The court overruled the request
of the association, refused all of the instructions tendered
by it, sustained Bratcher's request, and directed the jury
to return a verdict in his favor for $1,070, which was ac-
cordingly done. The association excepted to each and all
of the proceedings, filed its motion for a new trial, which
was overruled, and prosecuted error to this court.

1. Plaintiff in error's petition contains numerous as-

signments of error, but the allegation that the court erred in directing the jury to return a verdict for the defendant in error is the only one which requires our attention. By giving this instruction the court found upon the evidence, as a matter of law, that the plaintiff in the court below was entitled to recover. If, upon a fair consideration of the facts, as disclosed by the evidence and the record before us, we can sustain the finding and judgment of the trial court, we ought to do so. If, on the other hand, we are convinced that the court erred, we should not hesitate to so hold. The application which Bratcher and his wife made to the association to become beneficiary members thereof and for a joint benefit certificate therein, contained the following agreements:

(*a.*) "It is understood that under no circumstances shall the certificate hereby applied for be in force until this application has been approved by the medical director; nor until the applicant has been duly initiated into a local lodge and one assessment has been paid."

(*b.*) "And I further agree to pay all legal assessments, fees and dues made in conformity to the by-laws and rules of said National Aid Association; and I agree to abide by and conform to the laws, rules and regulations of said National Aid Association now in force, or that may be adopted, and of the local lodge of which I am a member; and I hereby agree to accept the obligation of said lodge as binding upon me."

(*c.*) "It is hereby warranted by the applicants that the answers and statements in this application, including the statements made to the medical examiner, were written with his full knowledge and consent and are full, complete and true; and it is agreed that this warrant shall form the basis and shall be a part of the contract between the undersigned and the aforesaid National Aid Association, and are offered to said order as a consideration for the contract applied for and subject to all its limitations and requirements, all of which are hereby made a part of the certificate to be issued on this application."

The benefit certificate on which this action was based was made out upon this application, and is as follows:

"No. 16853.        BENEFIT CERTIFICATE.        $1,000.

"THE NATIONAL AID ASSOCIATION OF THE UNITED STATES OF AMERICA.

"This certificate of membership witnesseth that in consideration of the representation made by Samuel T. and Lucinda Bratcher in their applications for membership in said National Aid Association, which is hereby made a part of this contract, said members further complying with the by-laws, rules and regulations governing said National Aid Association, then and in that case the said National Aid Association hereby promises to bind itself, that upon satisfactory evidence in accordance with its by-laws, of the death of Samuel T. or Lucinda Bratcher, the persons named and described in the applications for which this joint certificate is issued, to pay the surviving member the beneficiaries mentioned in said application, the sum of one thousand dollars, or such a sum as shall be derived from the benefit fund, upon an assessment made for said death on all its members, as provided by the by-laws, less the amount which has been paid to said member on account of loss of eye, or limb, or the old age benefit; and said sum not to exceed the amount of one thousand dollars, shall be received by said beneficiaries in full of all claims against the said National Aid Association, by virtue of this certificate.

"It is further stipulated that on satisfactory proof of the accidental loss by said member of both eyes or two limbs, one-half of the amount specified in this certificate shall be paid to said member.

"In case of the accidental loss of one eye, or one limb, one fourth of the amount specified in this certificate shall be paid to said member.

"It is further provided that a member may draw one-tenth of the amount of his or her certificate annually after becoming seventy years of age, and having paid

assessments for twenty years continuously, according to the conditions of the by-laws. The balance in either case to be paid to the beneficiary named herein at death of said member, as provided for in the by-laws.

"In witness whereof the National Aid Association has hereunto affixed its seal and caused this certificate to be signed by its national president and national secretary, this 7th day of November, 1898, at its office in Topeka, Kansas.

"ALONZO WARDALL, *National President.*

"S. D. COOLEY, *National Secretary.*"

National Aid Association seal. Helping Hand.

Indorsed: "Age, 31 and 29, Rate, $1.75. The National Aid Association. Beneficiary certificate No. 16853. This certificate must be signed by the local secretary when delivered."

The by-laws, rules and regulations of the association, which were received in evidence without objection, contain certain things which are material to this controversy, and which we quote:

"Who May Become Members. Sec. 20. All white persons engaged in agricultural or industrial pursuits, in the country, or in towns and villages, of not to exceed fifty thousand inhabitants, over eighteen years of age and under forty-five in general class, all over forty-five and under fifty-five years of age in class B, who can pass the required medical examination, provided that social members may be admitted from sixteen years of age."

"Certificates in Force. Sec. 24. No applicant shall become a member until duly initiated in a local lodge and his application has been received and approved by the national medical examiner, when he shall be entitled to a certificate of membership signed by the national president and national secretary, sealed with the seal of the order; said certificate, together with his application and these by-laws, shall constitute the agreement and contract, said certificate to take effect when the registry fee and advance assessment is paid."

32

"Assessments. Sec. 26. One advance assessment shall be collected when certificate is issued, and thereafter at the death of a member of this order each surviving member shall be assessed on the first of each regular assessment month, according to the age at the time of joining."

"Local Lodges—How Instituted. Sec. 39. Local lodges shall be instituted as follows: Whenever ten or more persons who are eligible, under section 20 of these by-laws, wish to secure the benefits of this order, make application to the national secretary, or an organizer, a blank application for a charter will be sent them, together with full instructions, and upon return of application properly filled out an organizer will be sent. No charges will be made or required except as provided for in section 22 and 26 of the national by-laws. Local lodges may fix their own lodge dues. Members of local lodges shall pay their assessments, and local and national dues to their secretary, who shall give them a receipt therefor which shall be binding upon the national order providing that the payment is made within the time specified in the national by-laws," etc.

Section 41 provides for persons becoming social members, and that such members shall not be eligible to the office of secretary or act as delegates to state or national meetings, or vote on any question directly affecting the financial interest of beneficiary members.

It will be observed that Bratcher and his wife were eligible to membership in the order under the provisions of section 20 of the by-laws, above quoted; that by the terms of section 24 they were not to become members until duly initiated into the local lodge, and that their certificate was not to take effect until the registry fees and advance assessments were paid; that by section 26 it was provided that "one advance assessment shall be collected when certificate is issued." As we have stated, section 39 provides for the institution or formation of new lodges, and declares that members of local lodges shall pay their assessments and local and national dues

to their local secretary, etc. We now come to the provisions relating to beneficiary members, which, in our opinion, must determine the rights of the parties in this case.

"Beneficiary Members.—All applicants must not be less than eighteen nor over fifty-five years of age, counting from birthday, properly examined by a competent physician duly authorized by the national officers, and regularly initiated in a local lodge of the order, and must thereafter maintain his membership in a local lodge and conform to the regulations prescribed by said local lodge, including the payment of local dues. Failure to pay local dues forfeits certificate just the same as failure to pay national dues and assessments. If the applicant is joining a new lodge he does not become a member until the lodge is regularly organized by a duly appointed organizer, officers elected and qualified and his certificate signed and delivered by the local secretary and his first assessment and- registry fee paid to the local secretary. After a lodge is organized and officers installed all applications must be presented by card, or if the charter is not closed, by certified list from the organizer of the lodge, a committee of three on investigation appointed by the president who report at the next regular meeting, or may, by two-thirds vote report at the same meeting, if deemed necessary."

The rest of this section relates to the manner of balloting, etc.

It is a well-established principle of law that where the contract of insurance is based on the statements and agreements contained in the application, and the applicant agrees that his application, the by-laws, rules and regulations of the association, together with the benefit certificate, shall constitute such contract, the courts will so construe it. In fact, the rule is, "In mutual benefit societies, the charter, constitution and by-laws in force at the time of the admission of a member are a part of the contract of insurance, whether they are referred to

in the certificate of membership or not." Niblack, Mutual Benefit Societies, sec. 166; *Supreme Commandery v. Ainsworth,* 71 Ala., 436; *Simeral v. Dubuque Mutual Fire Ins. Co.,* 18 Ia., 319, 322; *Susquehanna Ins. Co. v. Perrine,* 7 Watts & S. [Pa.], 348; *Liscom v. Boston Mutual Fire Ins. Co.,* 9 Met. [Mass.], 205. In *Simeral v. Dubuque Mutual Fire Ins. Co.,* supra, the court said: "The assured, becoming a member by virtue of his insurance, was bound to know the articles of the association and by-laws thereof. Not only so, but the charter and rules, being thus referred to in the policy, are to be taken as a part of the contract, in the same manner as if introduced into the body of the instrument." In the case at bar, it was agreed that the applicants should not become members of the order, and the certificate in question should not be in force, until they were initiated into a local lodge and one assessment had been paid. Bratcher was initiated into the local lodge, but his wife was not. If this were the only question involved in this action, we would feel constrained to hold that, under the circumstances, the fact that Mrs. Bratcher was not obligated in, and did not receive the mysterious secrets of the local lodge, would not require a reversal of the judgment of the lower court. Stover represented to Bratcher that if he was initiated at the time the lodge was instituted, his wife could come in later, and that the certificate, so far as that matter was concerned, would be good. Stover was the organizer for the association, and his authority was apparently unlimited so far as this requirement was concerned, and Bratcher had a right to rely on this statement. Again, in cases like this one, where the joint certificate is applied for at the formation of a new lodge, we do not construe the by-laws as requiring both of the joint beneficiaries to be initiated at the same time. If the assessments and registry fees had been paid to the local secretary, and the certificate had been signed and delivered by him, before the death of Mrs. Bratcher, the contract would have been complete, and the

fact that she died without having been initiated would not have prevented a recovery herein. Indeed, we might well hold that if the assessments and registry fees had been paid to the local secretary by Bratcher, or any one for him, before the death of his wife, it would have been the duty of the local secretary to sign and deliver the certificate in question, notwithstanding her death, and the certificate would have been in force from the date of such payment. Where the beneficiary has done everything and performed every act required of him, the mere fact that an officer of the local lodge had failed to perform some act in relation to the matter, would not be sufficient to prevent a recovery. But it will be observed that it was expressly agreed that the applicants should not become members and entitled to their certificate until the lodge was regularly organized by a duly appointed organizer, officers elected and qualified, and the certificate signed and delivered by the local secretary, and their first assessments and registry fees were paid to the local secretary. It was necessary that these conditions precedent should be complied with during the lifetime of the applicant, before there was any binding contract of insurance. The lodge was regularly organized by a duly appointed organizer, and the officers thereof were duly elected and qualified; but the advance or first assessments and registry fees of the applicants were not paid or even tendered, to the local secretary until two days after the death of Mrs. Bratcher. At that time the contract could not be created or put in force without the voluntary consent of the association itself. It will be observed that the whole question in this case turns upon the question of payment. Where an application for a certificate of membership declares on its face that payment of the membership fee is a condition precedent to the issuing of the certificate, the certificate is not in force until the membership fee is actually paid. Where the prepayment of the membership fee is made an essential part of the agreement, no agent can dispense with its requirements. *Ormond v.*

*Fidelity Life Ass'n,* 96 N. Car., 158, 1 S. E. Rep., 796; *Covenant Mutual Benefit Ass'n v. Conway,* 10 Ill. App., 348; Niblack, Accident Insurance & Benefit Societies, sec. 274. Where a person made an application for insurance and the application set out that the policy would not take effect until the membership fee was paid, but the agent of the society told the applicant that he could pay the fee either at that time, or when the policy was delivered, and the applicant elected to pay at the latter time, but died before the policy was received, it was held that the policy never took effect, and the insurer was not liable. *Ormond v. Fidelity Life Ass'n, supra.* It is not contended by the defendant in error that payment to Stover was such payment to the association as was necessary to complete the contract of insurance and put the benefit certificate in force. There is no dispute about the facts relating to this part of the transaction. The organizer was indebted to Bratcher for livery teams used in his work of organizing this new lodge. He never represented to Bratcher that such indebtedness would constitute payment to the association. He simply agreed to pay the association or the local secretary the necessary assessments and registry fees for the Bratchers in satisfaction of his debt. It is true that all of the certificates and the charter were sent to him; but recognizing the rules of the order, and his lack of authority to receive payment and to deliver them to the members, he turned over all of them except the one in question to the local secretary, who collected the assessments and fees, and in each case signed the certificate and delivered it to the person entitled to receive it. The certificate in question was retained by Stover until the 22d day of November, at which time he sent it by mail to the local secretary, together with the money required to pay the assessments and registry fees therefor. When the money was paid by him to the local secretary, Mrs. Bratcher had been dead two days. It is thus established beyond question, that the date of payment was too late to authorize the

local secretary to sign and deliver the certificate, and thus put the same in force and make Mrs. Bratcher a member of the association. She certainly never was a member of the order. Therefore the certificate never had any binding force.

2. It is contended by the defendant that the association has received and kept money so paid to the local secretary by Stover, and has thereby waived all question as to the time of payment, and that therefore the contract of insurance is in force. We can not agree with this contention. There is no dispute as to the facts, which are that when Hayes, the local secretary, received the money and the certificate he refused to sign and deliver it to Bratcher because, as he says, Mrs. Bratcher was dead. He did not give Bratcher a receipt for the money, but made out one to Stover and left it in his receipt book, so that it never was delivered to Stover, to whom it belonged. The fact that Bratcher's attorney, while acting for him in the matter here in question, acted as local secretary of the lodge for a short time, accounts for Bratcher's possession of this receipt. Secretary Hayes sent the money in question, together with other money due the association, to the national secretary, in the form of a money order for $9.20. It is true that the national secretary acknowledged receipt of the same, but, knowing of Mrs. Bratcher's death, he immediately returned the money order to the local secretary, and instructed him not to retain it, and not to deliver the certificate. About this time Hayes went out of office, and Bratcher's attorney was called upon to act as local secretary. He says that he sent the money order to the national secretary, who again refused to accept it, and returned it to him; that about this time it was discovered that Stiner was not a beneficiary member, and could not hold the office, and one John Kerr was elected secretary; that he thereupon delivered all of the books, papers and money in his hands to his said successor, except the money order in question, which, under instructions from the president of the asso-

ciation, Kerr refused to receive. It therefore appears that Mr. Stiner, the defendant's attorney, is in possession of this money for he says he has never negotiated the money order. We can not construe these facts to constitute a waiver of payment within the time necessary to constitute Mrs. Bratcher a member of the order, and put the certificate in force. The defendant places great reliance on the case of *Home Forum Benefit Order of Illinois v. Jones,* 48 S. W. Rep. (Tex. Civ. App.), 219, as an authority authorizing a recovery herein. It is a strong case in his favor on some of the questions involved in this controversy, and the court in that case has gone to and beyond the ordinary limit in such cases. We are not disposed to criticise the rule therein announced, for a careful reading of the opinion shows us that the court found, as conclusions of law, upon the facts, that the actual delivery to the members in person of the policy or benefit certificate was not a condition precedent to the liability of the defendant by its by-laws; that the contract of insurance was complete when the application had been accepted by the chief medical examiner of the defendant, and the certificate had been issued thereon, sealed and signed by the defendant's president and secretary, and sent to the local lodge to deliver (and this was concluded independent of any representations made by the organizer at the time the application was made); that the acceptance by the defendant of the payments that were due upon the delivery of the policy or benefit certificate, with full knowledge of the fact that the beneficiary was then dead and that said policy or certificate had not been delivered to her, and the acceptance of the sum of $5.50 paid at the time she made her application, with the express understanding and agreement that the same should be returned to her if she were rejected, and the failure on the part of the defendant to return or offer to return said sums of money, or any part thereof, constituted a waiver of the conditions relating to the question of payment. It will thus be seen

that the facts in that case were so different from those in this action that we are unable to base our decision on the rules announced therein.

3. It is further contended that the statements of the president of the association and the request that Bratcher attend the meeting at Topeka to negotiate a settlement of the claim, recognized the binding force of the certificate, and that plaintiff in error is estopped to now contest its validity. In order to create an estoppel by conduct, the other party must have been induced to act upon the representations or concealment; and his act must have been of a character to result in substantial prejudice, were he not permitted to rely on the estoppel. Herman, Estoppel, p. 3, sec. 6; *Betts v. Sims*, 25 Nebr., 166. In this case Bratcher lost nothing in attempting to settle the claim; his rights were in no way prejudiced thereby; and his expenses incurred by sending his attorney to Topeka, if any, were not shown, and no account was taken of them on the trial. We have not discussed the question relating to the manner in which defendant obtained possession of the certificate in question, because it has no place in this controversy. If the certificate was in force and created a liability against the association, an action could be maintained on it without the manual possession thereof.

For the foregoing reasons we hold that the court erred in directing the jury to return a verdict against the plaintiff in error, and we recommend that the judgment of the district court be reversed and the cause remanded for further proceedings in accordance with this opinion.

POUND and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, it is ordered that the judgment of the district court be reversed, and the cause remanded for further proceedings.

REVERSED AND REMANDED.

The following opinion on rehearing was filed on March 18, 1903:

Commissioner's opinion, Department No. 3.

**To Stand as Decided.** Former opinion in this case, reported on page 378, *ante*, adhered to.

ALBERT, C.

This case is before us on rehearing. The former opinion is reported on page 378, *ante*, where the facts are fully stated. The reargument has developed nothing that is not covered by the former opinion. In that opinion our own views on the several propositions discussed are so fully and clearly expressed, that to attempt to express them here would be to paraphrase what has already been said. Our confidence in those views has not been shaken by the reargument, and we recommend that the former judgment of this court, reversing the judgment of the district court and remanding the cause for further proceedings according to law, be adhered to.

DUFFIE, C., concurs.

By the Court: For the reasons stated in the foregoing opinion, the former judgment of this court, reversing the judgment of the district court and remanding the cause for further proceedings according to law, is adhered to.

REVERSED AND REMANDED.